UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x
**SONIA ALLEYNE,**
*individually*,

                         **Plaintiffs**

-against-

**NEW YORK CITY DEPARTMENT OF FINANCE,**
           **Defendants.**
_____ _____ x

**Civil Action No: 21-cv-5976**

**COMPLAINT**
**DEMAND FOR JURY TRIAL**

Plaintiff Sonia Alleyne ("Plaintiff Alleyne" or "Ms. Alleyne"), by and through her attorney, Tyrone Blackburn Esq, upon her knowledge and belief, and as against New York City Department of Finance ("Defendants"), alleges as follows:

## NATURE OF ACTION

1. This is an action for monetary and declaratory relief to redress Defendants' violation of Plaintiffs' workplace rights. Plaintiff seeks relief for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Equal Pay Act of 1963, and the New York (city and state) Equal Pay Act.

2. At all times relevant to this Complaint, Defendants maintained a policy and practice of knowingly and willfully compensating black female Directors of Public Information less than their female and male Caucasian colleagues, violating federal, state, and city equal pay laws.

3. Plaintiff now brings this action on behalf of herself for violating Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Equal Pay Act of 1963, and the New York (city and state) Equal Pay Act, including applicable liquidated damages, interest, attorneys' fees, and costs.

## ADMINISTRATIVE PROCEDURES

4. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for her Title VII race, gender, and sex wage discrimination claims. Plaintiff was issued the Right to Sue Letter from the EEOC.

1

5. All conditions precedent to the filing of the suit have been performed or have occurred.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C § 1331 (federal question) and Title VII and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

7. The venue is proper in this district under 28 U.S.C § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district. Defendant maintains its corporate headquarters and offices within this district. Further, Plaintiff was employed by Defendants in this district.

## PARTIES

*Plaintiff*

8. Plaintiff Sonia Alleyne is an adult individual residing in Kings County, New York. Plaintiff Alleyne is 57 years old and single. Before her arrival to the New York City Department of Finance ("DOF"), Plaintiff Alleyne worked for eight years as the Editorial Director of Black Enterprise Magazine. While at Black Enterprise Magazine, Plaintiff served as founding editorial director for the Women of Power Summit. In this position, Plaintiff was responsible for launching and managing key branch franchises and consulted on custom events that focused on job creation and supplied diversity.

9. In May of 2014, Plaintiff used her eight years of experience creating business communication strategies to obtain her role as Director of Public Information with the New York City DOF. In this role, Plaintiff was assigned to the Public Relations Division and was part of the senior management team. She developed the communications platform, managed the communications team, developed and launched marketing campaigns, served as the official representative to the media, and restructured the social media strategy.

10. Plaintiff Alleyne was employed by Defendant, the New York City Department of Finance, from approximately 2014 to 2019.

*Defendants*

11. Defendants own, operate, or control the NYC Department of Finance at all relevant times, located at 1 Centre Street, New York, NY 10007 under the name "New York City Department of Finance."

12. Upon information and belief, the New York City Department of Finance is a government entity organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1 Centre Street, New York, NY 10007.

13. Defendant determines the wages and compensation of the employees of Defendant, including Plaintiff, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

14. Defendant is the revenue service, taxation agency, and recorder of deeds of the government of New York City.

15. Defendant, an employer, acts in the interest of itself concerning employees, pays employees by the same method, and shares control over the employees.

16. Defendant possessed substantial control over the policies and practices concerning compensation of Plaintiff Alleyne referred to herein.

17. Defendants employed Plaintiff Alleyne and were Plaintiff Alleyne's employers within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

18. In the alternative, Defendant constitutes a single employer of Plaintiff.

19. At all relevant times, Defendant was Plaintiff's employer within the meaning of the FLSA and NYLL. Defendants had the power to hire and fire Plaintiff and determine the rate and method of any compensation in exchange for Plaintiff's services.

*Plaintiff Alleyne*

20. Plaintiff Alleyne is a former employee of Defendant who was employed as the Director of Public Information.

21. Plaintiff Alleyne is a black woman who is over the age of 40. Upon information and belief, Ms. Alleyne worked for Defendant corporation from 2014 as a Director of Public Information until the defendant corporation constructively discharged her in 2019.

22. According to their website, Defendant's corporation requires the following qualifications for Director of Public Information: A Bachelor's degree in communications or a related field is preferred
    - Previous experience working in public relations or communications

- Strong writing, editing, and content development capabilities
- Five years of experience identifying, creating and executing communication programs in support of various strategic business priorities
- Computer proficiency and social-media-savvy required
- Must be a strategic problem-solver who is dedicated with the ability to think creatively and generate new ideas

## PLAINTIFF ALLEYNE WAS QUALIFIED TO WORK AS A DIRECTOR OF PUBLIC INFORMATION FOR DEFENDANT'S CORPORATION

23. Upon information and belief, Plaintiff Alleyne graduated with a bachelor's degree in Communications Studies with a Concentration in Business and Organizational Communications from Emerson College located in Boston, Massachusetts. From 2006 to 2014, Plaintiff Alleyne worked as an Editorial Director at Black Enterprise Magazine in New York, NY. In 2014, Plaintiff Alleyne used her eight years of experience in the communications field to obtain her role as a Director of Public Information for Defendants Corporation.

24. Plaintiff Alleyne's education satisfied Defendant's corporation's requirements for Director of Public Information.

25. Plaintiff Alleyne's eight years of editorial director experience satisfied Defendant's corporations' requirements for the Director of Public Information.

26. In or about March 2019, Plaintiff Alleyne was asked to transition into an internal communications role. While formally applying for this new position, Plaintiff Alleyne learned that Defendant was paying her less than what was being offered for her current role on a job posting site. (**See Exhibit A**).

27. Upon information and belief, on March 27, 2019, Plaintiff Alleyne confronted Corrine Dickey ("Dickey"), head of Employee Services, to question the disparity. Upon information and belief, instead of addressing the pay discrepancy between what the job posting offered of Plaintiff's current role and what Plaintiff was being paid in that role, Dickey's response was, "How did you find out?" Plaintiff Alleyne then asked about an increase in salary for the new position, and Dickey referred her to the Commissioner.

28. Upon information and belief, on March 28, 2019, Plaintiff asked the Commissioner why the job posting salary for the position she was transitioning out of was so much higher than what she is paid. The Commissioner, Jacques Jiha ("Jiha" "the Commissioner"), told Plaintiff that her salary was "appropriate for now" and that she was "lucky to still have a job."

29. Upon information and belief, Plaintiff Alleyne is paid less than her Caucasian counterparts who are employed with the same essential work duties and title, in violation of the Title VII of the Civil Rights Act of 1964, New York Equal Pay Act's, and the New York Labor Law (NYLL).

**Plaintiffs Salary**

30. In May of 2014, Plaintiff was hired as a Director of Public Information at the New York City Department of Finance, at an annual salary of $105,000.00.

31. When Plaintiff applied for the job at the Department of Finance, she asked Commissioner Jacques Jiha for a salary of $120,000.00. Jacques Jiha informed Plaintiff that there were salary parameters, and he could not pay Plaintiff more money. As Plaintiff would later learn, Jacques Jiha's assertions were false.

32. Upon information and belief, within a few months, Jiha raised Plaintiff Alleyne's salary to $110,000. Due to Citywide pay increases, Plaintiff Alleyne's salary was raised to $115,000.00 annually.

33. Upon information and belief, on or about March of 2019, Plaintiff Alleyne was asked to transition into an internal communications position. She would be removed from senior staff, removed from the executive floor, given a new title of "Executive Assistant[1] to the Commissioner" and report to the chief of staff[2]. While formally applying for the new position, Plaintiff was alerted that her current role had been posted. When she reviewed the posting, Plaintiff learned that the annual salary offering was $130,000.00 to $140,000.00.

34. Upon information and belief, Plaintiff was grossly underpaid compared to her Caucasian female and male colleagues during her time working as the Director of Public Information at Defendant's office.

35. Upon information and belief, it was discovered that Defendants were paying Plaintiff less than her Caucasian predecessor Owen Stone ("Stone"). Plaintiff was paid a base salary of $105,000.00, while Stone was paid $130,000.00.

36. Upon information and belief, Stone was not the only individual earning more than Plaintiff Alleyne. Across City agencies, Plaintiff Alleyne's Peers also earned thousands of dollars more.

---

[1] According to NYC's job site, an Executive Assistant is an entry-level position. Clearly not a role suitable to a person of Plaintiff's professional caliber.
[2] The Chief of Staff was once Ms. Alleyne's peer.

37. **Plaintiff Alleyne's Comparators**:

| Comparator | Position | Salary | Difference | Gender and Race |
|---|---|---|---|---|
| Rachaele Raynoff | Director of Public Information | $133,936.00 | $18,936.00 more than Ms. Alleyne | While Female |
| Jacqueline Gold | Director of Public Information | $141,500.00 | $26,500.00 more than Ms. Alleyne | White Female |
| Abby Lootens | Director of Public Information | $131,337.00 | $16,337.00 more than Ms. Alleyne | White Female |
| Ted Timbers | Director of Public Information | $175,693.00 | $60,693.00 more than Ms. Alleyne | White Male |
| Barbara Brancaccio | Director of Public Information | $149,589.00 | $34,589.00 more than Ms. Alleyne | White Female |
| Diane Struzzi | Director of Public Information | $148,384.00 | $33,384.00 more than Ms. Alleyne | White Female |
| Nick Paolucci | Director of Public Information | $171,760.00 | $56,760.00 more than Ms. Alleyne | White Male |
| Janet Allon | Director of Public Information | $124,658.00 | $9,658.00 more than Ms. Alleyne | White Female |
| Marisa Sengio | Director of Public Information | $140,447.00 | $25,447.00 more than Ms. Alleyne | White Female |
| Phil Walzak | Director of Public Information | $225,322.00 | $110,322.00 more than Ms. Alleyne | White Male |
| Vito Turso | Director of Public Information | $211,111.00 | $96,111.00 more than Ms. Alleyne | White Male |
| Julienne Cho | Director of Public Information | $161,076.00 | $46,076.00 more than Ms. Alleyne | White Female |
| Mark Zustovich | Director of Public Information | $137,076.00 | $22,076.00 more than Ms. Alleyne | White Male |

| Allen Fromberg | Director of Public Information | $169,997.00 | $54,997.00 more than Ms. Alleyne | White Male |
| Michael Greenberg | Director of Public Information | $116,430.00 | $1,430.00 more than Ms. Alleyne | White Male |

38. Upon information and belief, there is no difference in job duties, qualifications, or responsibilities for Directors of Public Information at the other city agencies.

39. Upon information and belief, black female Directors of Public Information are paid less than their female and male Caucasian colleagues, violating Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act of 1963, and the New York Equal Pay Act.

## PLAINTIFF ALLEYNE REPORTED PAY DISPARITY AND REQUESTED A PAY INCREASE TO SENIOR MANAGEMENT

40. Upon information and belief, on or about March of 2019, Plaintiff Alleyne reported the disparity in pay to Defendant. Defendant told Ms. Alleyne that her salary was "appropriate for now" and dismissed Plaintiff's concerns regarding the pay disparity.

41. Upon information and belief, Plaintiff Alleyne was paid less than her male Caucasian predecessor. In particular, Stone earned approximately $25,000.00 per year in pay difference, and the pay difference was based primarily on Plaintiff Alleyne's gender and race.

42. Upon information and belief, black female Directors of Public Information are paid less than their female and male counterparts in violation of the Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act of 1963, and the New York Equal Pay Act.

## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 CLAIMS

43. Defendant has engaged in egregious acts of racial discrimination and gender discrimination, violating Title VII of the Civil Rights Act of 1964, the New York Equal Pay Act, and the New York Labor Law (NYLL).

44. Plaintiff was grossly underpaid compared to her Caucasian colleagues. Defendants willfully and intentionally paid the black female Directors of Public Information less than their Caucasian colleagues, violating federal, state, and city equal pay laws.

45. Upon information and belief, Plaintiff Alleyne is paid substantially less than her Caucasian female and male colleagues during her time working as the Director of Public Information at Defendant's office.

46. Plaintiff Alleyne was paid tens of thousands of dollars less than her Caucasian predecessor Owen Stone upon information and belief. As previously mentioned, Plaintiff was paid a base salary of $105,000.00 while Mr. Stone was paid $130,000.00[3].

## DEFENDANTS INTENTIONALLY DISCRIMINATES ON THE BASIS OF RACE AND GENDER

47. Upon information and belief, Defendants willfully and intentionally paid the black female Directors of Public Information less than their Caucasian colleagues.

48. Upon information and belief, Plaintiff Alleyne was paid substantially less than her Caucasian colleagues. Upon information and belief, Defendants paid Caucasian Male Directors of Public Information Mark Zustovich and Allen Fromberg more than Plaintiff Alleyne and all similarly situated employees.[4]

49. At the time of Plaintiff's employment, Director Mark Zustovich earned $137,076.00 annually, Allen Fromberg was paid $169,997.00 annually, and Plaintiff Alleyne was paid $105,000.00 annually.

50. Upon information and belief, Defendant paid Caucasian Female Directors of Public Information Diane Struzzi and Barbara Branccio more than Plaintiff Alleyne.[5]

51. Upon information and belief, Director Diane Struzzi was paid $148,384.00 annually, Director Barbara Branccio was paid $149,589.00 annually, and Plaintiff Alleyne was paid $105,000.00 annually.

## PLAINTIFF ALLEYNE PERFORMED THE SAME JOB DUTIES AND RESPONSIBILITIES AS HER COMPARATORS

52. Plaintiff Alleyne, Diane Struzzi, and Barbara Brancaccio performed equal work doing a job that required equal skill, effort, and responsibility.

53. Diane Struzzi and Barbara Brancaccio are both Caucasian females.

54. Upon information and belief, these two individuals are Directors of Public Information and are direct comparators for Plaintiff Alleyne.

---

[3] For additional comparators, see ¶37 above.

[4] Other male Caucasian employees include, but are not limited to, Ted Timbers, who earns $175,693.00 annually; Phil Walzak, who earns $225,322.00 annually; and Vito Turso, who earns $211,111.00 annually.

[5] Other female Caucasian employees include, but are not limited to, Janet Allon, who earns $124,658.00 annually; Abby Lootens, who earns $131,337.00 annually; and Jacqualine Gold, who earns $141,500.00 annually.

55. Plaintiff Alleyne was employed as the Director of Public Information at the Department of Finance. Further, in comparison, these two individuals, Diane Struzzi and Barbara Brancaccio, made tens of thousands of dollars more than Plaintiff Alleyne.

### RACE AND GENDER WERE MOTIVATING FACTORS OF THE COMMISSIONER JACQUES JIHA'S DECISION TO PAY PLAINTIFF ALLEYNE LESS THAN HER CAUCASIAN COLLEAGUES

56. Upon information and belief, for the reasons mentioned above, Plaintiff Alleyne's race and gender were motivating factors that contributed to Commissioner Jacques Jiha paying her less than her Caucasian colleagues. When Plaintiff Alleyne asked Commissioner Jacques Jahi why the job posting salary for the position she was transitioning out of was so much higher than what she is paid, Jiha said that Ms. Alleyne's salary was "appropriate for now."

57. As previously mentioned, when Commissioner Jacques Jiha hired Plaintiff, a black female, she decided to pay her a base salary of $105,000.00. Meanwhile, several individuals with the same job title, duties, and responsibilities were given base salaries tens of thousands of dollars higher than Plaintiff. Many of these individuals informed Plaintiff Alleyne that they were earning between $116,000.00 to $250,000.00. These individuals include, but are not limited to, Owen Stone, Plaintiff Alleyne's predecessor who was given a base salary of $130,000.00, and Jacqueline Gold, a Caucasian Female who was given a base salary of $141,500.00.

58. As previously mentioned, other Caucasian female colleagues with the same job title, duties, and responsibilities compensated more than Plaintiff Alleyne. When Plaintiff Alleyne was hired, she was paid a base salary of $105,000.00 annually. When Abby Lootens was hired, she was compensated $131,337.00 annually, which is $16,337.00 more than Plaintiff Alleyne. When Marisa Sengio was hired, she was compensated a base salary of $140,447.00, which is $25,447.00 more than Plaintiff Alleyne.

59. As previously mentioned, Caucasian males across City agencies earned thousands of dollars more than Plaintiff Alleyne. These individuals include, but are not limited to, Mark Zustovich, who was compensated a base salary of $137,076.00; and Nick Paolucci, who was compensated a base salary of $171,760.00. Both of the individuals received a salary tens of thousands of dollars higher than Plaintiff Alleyne.

### FIRST CAUSE OF ACTION
### VIOLATION OF FEDERAL EQUAL PAY LAW

**UNDER THE EQUAL PAY ACT OF 1963, the NYS and NYC EQUAL PAY ACT**

60. Plaintiff Alleyne repeats and alleges all paragraphs above as though fully set forth herein.

61. Upon information and belief, at all times relevant to this action, Defendants were Plaintiff Alleyne's employer within the meaning of 29 U.S.C. § 255(a) of the Equal Pay Act. Defendants had the power to hire and fire Alleyne, control her employment terms and conditions, and determine the rate and method of any compensation in exchange for her employment.

62. Upon information and belief, Defendants were engaged in commerce or industry or activity affecting commerce at all times relevant to this action. Defendants constitute an enterprise within the meaning of 29 U.S.C. § 255(a) of the Equal Pay Act, NYC, and NYS Equal Pay Act's.

63. Upon information and belief, Defendants failed to pay Plaintiff Alleyne, equally with her Caucasian colleagues whose job performance requires equal skill, effort, and responsibility and which are performed under similar working conditions, in violation of 29 U.S.C. § 255(a) of the Equal Pay Act, NYC, and NYS Equal Pay Act.

64. Upon information and belief, Plaintiff Alleyne, a black female Director of Public Information, performed similar job duties and functions as her Caucasian colleagues.

65. Upon information and belief, Defendants discriminated against Plaintiff Alleyne by subjecting her to discriminatory pay, discriminatory denial of her asking salary of $120,000.00 when she applied for the Department of Finance job, and other forms of discrimination in compensation in violation of the Equal Pay Act.

66. Upon information and belief, Plaintiff Alleyne earned $105,000.00 per year as a Director of Public Information. In contrast, her predecessor male Caucasian colleague, Owen Stone, earned $130,000.00 per year as a Director of Public Information.

67. The difference in pay between Plaintiff Alleyne and Owen Stone was not due to seniority, merit, quantity or quality of production, or a factor other than sex. Rather, the differential in pay was due to Plaintiff Alleyne's gender and race.

68. Defendants' failure to pay Plaintiff Alleyne equally with her Caucasian coworkers was willful within the meaning of 29 U.S.C. § 255(a) of the Equal Pay Act.

69. Plaintiff Alleyne was damaged in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

70. Plaintiff Alleyne repeats and realleges all paragraphs above as though fully set forth herein. Plaintiff is a black female.

71. At all relevant times, Plaintiff Alleyne has been subject to Defendants' standard practices, policies, programs, procedures, protocols, and plans, including willfully engaging in conduct that violates the Civil Rights Act of 1964 § 701 et seq., 42 U.S.C.A. § 2000e *et seq*.

72. This claim is authorized and instituted under Title VII of the Civil Rights Act, 42 U.S.C.§2000e *et seq*., based upon the discriminatory employment practices of Defendants. Specifically, Plaintiff complains that Defendants discriminated against her in wages based upon her race, causing her to suffer substantial injury and damages.

73. Upon information and belief, Plaintiff Alleyne was paid less than the rate at which their similarly situated White colleagues were paid for a job requiring equal skill and performed under similar working conditions.

74. Upon information and belief, Plaintiff Alleyne was offered less than the rate at which her similarly situated Caucasian colleagues were paid for a job requiring equal skill and performed under similar working conditions.

75. Upon information and belief, Plaintiff Alleyne performed the same job, under the same circumstances, with the same responsibilities as her Caucasian male colleague, Owen Stone.

76. In addition to Mr. Stone, Plaintiff Alleyne did the same job, under the same circumstances, with the same responsibilities, as her other Caucasian male colleagues, Ted Timbers, Nick Paulucci, Phil Walzak, Julienne Cho, Allen Formberg, Mark Zustovich, and Michael Greenberg.

77. Defendants' failure to pay Plaintiffs equally with her Caucasian coworkers was based on the Defendant's disdain for Plaintiff's sex/gender, in violation of Title VII of the Civil Rights Act, 42 U.S.C.§2000e *et seq*.

78. As a direct, legal, and proximate result of the discrimination, Plaintiff Alleyne has sustained and will continue to sustain economic damages to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

79. Defendants' unlawful actions were intentional, willful, malicious, and done with reckless disregard to the Plaintiffs' right to be free from discrimination based on race and gender.

## THIRD CAUSE OF ACTION
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Brought on behalf of Plaintiff Alleyne)**

80. Plaintiffs Alleyne repeats and realleges all paragraphs above as though fully set forth herein.

81. This claim is authorized and instituted under Title VII of the Civil Rights Act, 42 U.S.C.§2000e *et seq.*, based upon the discriminatory employment practices of Defendants. Specifically, Plaintiff complains that Defendants discriminated against her in compensation based on their race and gender, causing them to suffer substantial injury and damages.

82. Upon information and belief, Plaintiff Alleyne was paid less than which her similarly situated Caucasian colleagues[6] are paid for a job requiring equal skill and performed under similar working conditions.

83. Defendants' failure to pay Plaintiff Alleyne equally with their Caucasian coworkers was based on the Defendant's disdain for Plaintiffs' skin color, in violation of Title VII of the Civil Rights Act, 42 U.S.C.§2000e *et seq*.

84. Less discriminatory alternatives existed to achieve Defendants' stated business purposes.

85. As a direct, legal, and proximate result of the discrimination, Plaintiff has sustained and will continue to sustain economic damages to be proven at trial. As a result of Defendants' actions, Plaintiffs have suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

86. Defendants' unlawful actions were intentional, willful, malicious, and done with reckless disregard to the Plaintiffs' right to be free from discrimination based on race.

## FOURTH CAUSE OF ACTION
### CONSTRUCTIVE DISCHARGE IN VIOLATION OF NYS/CHRL

87. Ms. Alleyne repeats and realleges by reference all paragraphs above as though fully set forth herein.

88. At all relevant times hereto, Plaintiff was an "employee" within the meaning of Title VII, NYS/CHRL, and Defendant was an "employer" within Title VII, NYS/CHRL.

---

[6] For a complete list of comparators, see ¶37 above.

89. Ms. Alleyne was subjected to discrimination based on her gender, race, and sex and subject to retaliation for her complaints about gender, race, and sex wage discrimination.

90. A constructive discharge occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so complex or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.

91. Here, Defendants intentionally retaliated against Ms. Alleyne after she questioned their discriminatory payment and compensation practices. In or about April 2019, after Ms. Alleyne raised salary concerns with human resources and the Commissioner, her role, position, and title were restructured. She was reassigned to a less favorable location within the organization. Her new title would be "Executive Assistant to the Commissioner," she would be removed from senior staff and moved off the executive floor. She was also forced to report to the Chief of Staff, who was once Ms. Alleyne's peer as a senior staff member. This retaliatory act by Defendant was a direct result of Ms. Alleyne's complaint, which she filed with the human resources and the Commissioner. Defendant's actions were tantamount to the termination of Ms. Alleyne, leaving her with no choice but to resign and seek other employment.

92. Upon information and belief, as a result of Defendant's deliberate retaliatory actions, Ms. Alleyne resigned from her role as Director of Public Information.

93. Defendants' actions and omissions warrant an award of punitive damages.

## FIFTH CAUSE OF ACTION
## RETALIATION IN VIOLATION OF NYCHRL, NYSHRL, EPA, AND TITLE VII

NYSHRL, EPA, and NYCHRL Retaliation:

94. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

95. At all relevant times, Plaintiff was an "employee" within the meaning of NYS, the EPA, and NYC law, and Defendant was an "employer" within the meaning of NYS, the EPA, and NYC law.

96. Plaintiff engaged in protected activity when she raised concerns about race, gender, and sex-based wage discrimination with human resources and the Commissioner.

97. Plaintiff engaged in protected activity when she opposed Defendant's refusal to explain why her Caucasian male and female colleagues were compensated at an extensively disproportionate rate more than her. Plaintiff engaged in the following protective activities:

13

- Filing a complaint with internal human resources, and
- Filing a complaint with the Commissioner.

98. As a direct result of Plaintiff's request for reasonable accommodation and opposition to conduct prohibited by NYS, the EPA, and NYC law, Defendant retaliated against Plaintiff by:
    - Refusing to engage Plaintiff's inquiry,
    - Reassigning Plaintiff to a less favorable role within the organization,
    - Removing Plaintiff from senior staff and reducing her title to Executive Assistant to the Commissioner, and
    - Requiring her to report to the Chief of Staff, who was Ms. Alleyne's peer when Ms. Alleyne was a member of the Senior Executive Staff.

99. Defendant treated Plaintiff less favorably than her similarly situated counterparts who did not engage in protected activity. The comparators are listed above in ¶37.

100. Defendant coerced, intimidated, threatened, and interfered with Plaintiff in the exercise and enjoyment of her rights under NYS, the EPA, and NYC law by refusing to engage Plaintiff with her inquiry concerning the glaringly obvious wage discrimination; reassigning Plaintiff to a less favorable role, and by reducing Plaintiff to title and removing her from senior staff.

101. The defendant is liable for the acts and omissions of its agents and employees. In addition, Defendant, either directly or by and through its agents, retaliated against Plaintiff and caused her injuries, damages, and losses.

102. Defendant's retaliatory conduct was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

103. Defendant's conduct was with malice or reckless indifference to Plaintiff's Federal, State and City protected rights under NYS, the EPA, and NYC law.

<u>Title VII Retaliation</u>:

104. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

105. At all appropriate time hereto, Plaintiff was an "employee" within the meaning of Title VII, and Defendant was an "employer" within the meaning of Title VII.

106. As outlined above, because Plaintiff engaged in activity protected by Title VII, Defendant violated Title VII when it retaliated against Plaintiff by:
    - Refusing to engage Plaintiff's inquiry,
    - Reassigning Plaintiff to a less favorable role within the organization,

- Removing Plaintiff from senior staff and reducing her title to Executive Assistant, and
- Requiring her to report to the Chief of Staff, who was Ms. Alleyne's peer when Ms. Alleyne was a member of the Senior Executive Staff.

107. As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, as well severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of damages, attorney's fees, and costs.

108. Defendant's unlawful actions constitute bad faith, malicious, willful, and wanton violations of Plaintiff's federally protected rights, for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants by:

a) Declaring that Defendants violated the federal Equal Pay Act of 1983 concerning Plaintiff Alleyne's compensation;

b) Declaring that Defendants' violations of the federal Equal Pay Act of 1963 were willful as to Plaintiff Alleyne;

c) Declaring that Defendants violated Title VII of the Civil Rights Act of 1964, as amended, concerning Plaintiff Alleyne's compensation;

d) Declaring that Defendants' violation of Title VII of the Civil Rights Act of 1964, as amended, was willful as to Plaintiff Alleyne;

e) Awarding Plaintiff Alleyne the expenses incurred in this action, including costs and attorneys' fees;

f) Awarding Plaintiff pre-judgment and post-judgment interest as applicable;

g) Award Plaintiff Alleyne, the value of all compensation and benefits, lost and that they will lose in the future as a result of Defendants' unlawful conduct that violated the federal and state Equal Pay laws;

h) Award Plaintiff Alleyne compensatory and punitive damages that stem from Defendants' violation of federal and state equal pay laws;

i) Award Plaintiff Alleyne, the value of all compensation and benefits, lost and that they will lose in the future as a result of Defendants' unlawful conduct that violated Title VII of the Civil Rights Act of 1964;

j) Award Plaintiff Alleyne prejudgment interest and attorneys' fees, costs, and disbursements, as provided by law;

k) Providing that if any amounts remain unpaid upon the expiration of ninety (90) days following issuance of the judgment or ninety (90) days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen (15%) percent, as required by NYLL § 198(4); and

l) All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Alleyne demands a trial by jury on all issues triable by a jury.

Dated: New York, New York
July 12, 2021


By:  Tyrone A. Blackburn, Esq.

_____/s/ Tyrone Blackburn_____
Tyrone A. Blackburn, Esq.
Attorney for Plaintiffs
1242 E. 80th Street, 3rd Floor
Brooklyn, New York 11236
Telephone: (347) 342-7432